**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**


**INFOMATH, INC.**                                                                                **PLAINTIFF**

**V.**                                    **4:04CV00488-WRW**

**UNIVERSITY OF ARKANSAS D/B/A**
**UNIVERSITY OF ARKANSAS AT LITTLE**
**ROCK -- DONAGHEY COLLEGE**
**OF INFORMATION SCIENCE AND**
**SYSTEMS ENGINEERING, and MARY L.**
**GOOD and CHERYL CALDWELL, acting**
**in their official capacities as employees**
**of the University of Arkansas**                                              **DEFENDANTS**


<u>**ORDER**</u>

Pending are Defendants' Motion (Doc. 4) and Amended Motion to Dismiss (Doc. 15), to

which Plaintiff responded (Docs. 8, 19).

Plaintiff requests damages, declaratory relief, and injunctive relief for copyright

infringement.  Defendants argue that the claims should be dismissed for lack of subject matter

jurisdiction, since they are immune from suit under the Eleventh Amendment of the United

States Constitution.

**I.  Background**

In March of 2000, Plaintiff InfoMath and Defendant University of Arkansas at Little

Rock ("University") entered into a written contract to provide an internet based pre-calculus

course for Arkansas schools.[1]  Defendant Mary L. Good ("Good") is Dean of the Donaghey

---

[1]Doc. No. 1, p. 2.

1

College of Information Science and Systems Engineering.   Defendant Cheryl Caldwell

("Caldwell") was an employee of the University and served as the project coordinator for the

pre-calculus course.

 Under the contract, InfoMath would design and develop the course and the University

would provide the course material.  The University would retain copyright interests in all the

material it created.  Caldwell would guide a project team composed of herself, University math

professors, and school teachers to develop the material.  Caldwell and the University, however,

never provided any course material to InfoMath.[2]

When the University did not provide the course material, InfoMath contracted with third-

party teachers to create its own course content.[3]  InfoMath, however, allowed the University to

use this material as long as it maintained a contractual relationship with InfoMath.

InfoMath completed all the requirements of the initial contract and received excellent

performance reviews.  At the request of the University, InfoMath also provided services outside

the scope of the original contract, like creating a database and website.  InfoMath provided the

additional materials and services because they were assured by Caldwell that this was the

beginning of a long term relationship.[4]

In the spring of 2001, the University informed InfoMath that it would have to bid for the

right to host the website and database that it had already created.  InfoMath lost the bid, but now

argues that it has exclusive copyright interests of all the course content it created.  InfoMath

---

[2]Doc. No. 1, p. 2.

[3]InfoMath later received a copyright registration for this material four years later on April 16, 2004, approximately four years after the initial contract with the University.

[4]Doc. No. 1, p. 3.

contends that, since the University did not provide any course content to InfoMath, it has no interests in the InfoMath created course. The University has continued to use InfoMath's course since dissolving their contractual relationship in May of 2001.

InfoMath filed a claim to the Arkansas Claims Commission in order to determine the rights of the parties under the contract. The Claims Commission unanimously found the University liable and awarded $15,000 to InfoMath. The Claims Commission did not make a ruling about copyright ownership or injunctive relief requested by InfoMath. Thus, InfoMath contends that the ruling from the Claims Commission is inadequate and filed this suit.

## II. Standard

A motion to dismiss should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts which would entitle him to relief.[5] The complaint's allegations must be accepted as true; and, the complaint, and all reasonable inferences arising from it, must be construed in a plaintiff's favor.[6] A complaint should not be dismissed merely because the complaint does not state with precision all elements that give rise to a legal basis for recovery.[7]

## III. Discussion

### A. Eleventh Amendment Sovereign Immunity

Defendants argue that they cannot be held liable under the Eleventh Amendment. However Eleventh Amendment protection is not absolute; there are two exceptions. The first

---

[5]*Thomas W. Garland, Inc. V. City of St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979).

[6]*United States v. Mississippi*, 380 U.S. 128, 143 (1965); see also *Bennett v. Berg*, 685 F.2d 1053, 1059 (8th Cir. 1983); *Bramlet v. Wilson*, 495 F.2d 714, 717 (8th Cir. 1974).

[7]*Bramlet*, 495 F.2d at 716; *Smith v. Quachita Technical College*, 337 F.3d 1079, 1080 (8th Cir. 2003).

exception applies when Congress has abrogated the immunity by statute.[8]  The second exception

applies when a state waives its immunity to suit in federal court.[9]  Plaintiff argues that both

exceptions apply.

The Eleventh Amendment provides that "the judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced, or prosecuted against one of the

United States by citizens of another state, or by citizens or subjects of any foreign state."[10]  In

determining the applicability of the Eleventh Amendment to the political subdivisions of the

state, this Court must,

> [e]xamine the particular entity in question and its power and characteristics as
> created by state law to determine whether the suit is in reality a suit against the state.
> Courts typically look at the degree of local autonomy and control and most
> importantly whether the funds to pay any award will be derived from the state
> treasury.[11]

"Each state university . . . must be considered on the basis of its own particular circumstances"[12]

in determining if the university is a state instrumentality that enjoys the protection of the

Eleventh Amendment.  As of 1985, the Eighth Circuit determined that the majority of cases

addressing the question of Eleventh Amendment immunity for public colleges and universities

held that these institutions are arms of their respective state governments and are immune from

---

[8]*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976).

[9]*Barnes v. Missouri*, 960 F.2d 63, 65 (8th Cir. 1992).

[10]U.S. Const. amend XI.

[11]*Okruhlik v. University of Arkansas ex rel. May*, 255 F.3d 615, 622 (8th Cir. 2001);
*Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985).

[12]*Greenwood*, 778 F.2d at 453.

suit.[13]  The *Greenwood* court did not make the final determination whether the University of

Arkansas was immune from suit and remanded the case for that determination.  The District

Court held that the University of Arkansas is immune from suits for damages under the Eleventh

Amendment.[14]

The Eleventh Amendment bars federal suits against public servants in their official

capacities when the "state is the real, substantial party of interest."[15]  The Eleventh Amendment,

however, does not bar suits against a public servant in his official capacity when he is alleged to

have committed an unconstitutional act or illegal act because the state has no authority to order

such acts, and the official is therefore "stripped of his official or representative character."[16]

---

[13]*Id.* (*quoting Hall v. Medical College*, 742 F.2d 299, 301 (6th Cir. 1984) (Ohio); see
*United Carolina Bank v. Board of Regents*, 665 F.2d 553, 561 (5th Cir. 1982) (Stephen F. Austin
State University in Texas); *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1349-50 (9th
Cir. 1981) (Arizona State University), *Jagnandan v. Giles*, 538 F.2d 1166, 1176 (5th Cir. 1976)
(Mississippi State University), *cert. denied*, 432 U.S. 910 (1977); *Prebble v. Brodrick*, 535 F.2d
605, 610 (10th Cir. 1976) (University of Wyoming); *Long v. Richardson*, 525 F.2d 74, 79 (6th
Cir. 1975) (Memphis State University); *Brennan v. University of Kansas*, 451 F.2d 1287, 1290
(10th Cir. 1971); *Walstad v. University of Minnesota Hospitals*, 442 F.2d 634, 641-42 (8th Cir.
1971). *Contra Goss v. San Jacinto Junior College*, 588 F.2d 96, 98 (5th Cir.1978 ), *modified*,
595 F.2d 1119 (1979); *Dyson v. Lavery*, 417 F.Supp. 103, 108 (E.D. Va. 1976) (Virginia
Polytechnic Institute and State University); *Gordenstein v. University of Delaware*, 381 F.Supp.
718, 725 (D. Del. 1974).

[14]*Greenwood v. Ross*, No. LR-C-79-406, 1988 WL 156151 (E.D. Ark. January 29, 1988).

[15]*Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974) (holding that a suit against a state
official for violation of federal law may only seek injunctive relief governing the official's future
conduct); *Assad-Faltas v. University of Arkansas for Medical Sciences*, 708 F. Supp. 1026,
1029-1030 (E.D. Ark. 1989); *Slaughter v. Levine*, 801 F.2d 288 (8th Cir. 1986).

[16]*Id.* at 102.

Even in such cases, only injunctive relief is permitted because retroactive relief would have a direct impact on the state treasury.[17]

In the present case, Plaintiff requests injunctive relief and money damages.  However, the Eleventh Amendment bars Plaintiff's claims for money damages against the University and Defendants sued in their official capacity.  Accordingly, Defendants' Motion to Dismiss the University of Arkansas at Little Rock is GRANTED, and the request for money damages from Good and Caldwell, acting in their official capacity, is GRANTED.

### B. Copyright Remedy Clarification Act

Although the Eleventh Amendment prevents citizens from bringing suit against a state in federal court, Congress may abrogate a state's Eleventh Amendment immunity.  In order to successfully abrogate Eleventh Amendment immunity, Congress must: (1) clearly express its intent to waive immunity, and (2) act under a valid exercise of power found in Section 5 of the Fourteenth Amendment.[18]  This power is limited however.  The Supreme Court held that "there must be congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."[19]

In 1990, Congress enacted the Copyright Remedy Clarification Act ("CRCA").  In addition to the CRCA, Congress passed the Patent and Plant Variety Protection Remedy Clarification Act ("Patent Remedy Act") and the Trademark Remedy Clarification Act

---

[17]*Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974) (holding that a suit against a state official for violation of federal law may only seek injunctive relief governing the official's future conduct); *Assad-Faltas v. University of Arkansas for Medical Sciences*, 708 F. Supp. 1026, 1029-1030 (E.D. Ark. 1989); *Slaughter v. Levine*, 801 F.2d 288 (8th Cir. 1986).

[18]*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-71 (1996).

[19]*City of Boerne v. Flores*, 521 U.S. 507, 520 (1997).

("TRCA").[20]  Passage of these statutes were part of an effort by Congress to remedy imbalances between private and state institutions caused by the Eleventh Amendment sovereign immunity in trademark, copyright and patent law.[21]  All three statutes waive the state's Eleventh Amendment immunity from liability for violations of federal trademark, copyright, and patent law.

The CRCA states,

Any State, any instrumentality of a State, and any officer or employee of the State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity, for violation of any of the exclusive rights of a copyright owner.[22]

Plaintiff asserts that the actions of the Defendants violated its copyright interests.  Defendants argue, however, that the CRCA is unconstitutional.

It is clear from the language of the CRCA that Congress intended to abrogate Eleventh Amendment immunity.  The question now turns on whether Congress acted under a valid exercise of power found in Section 5 of the Fourteenth Amendment.  It did not.

In order to determine if Congress has successfully abrogated Eleventh Amendment immunity through the Fourteenth Amendment, the Supreme Court created a three part test.  First, the courts must identify the Fourteenth Amendment evil or wrongdoing that Congress intended to remedy.[23]  Second, the court must consider whether there are sufficient state remedies for a

---

[20]*Hairston v. N.C. Agric & Tech. State Univ.,* No. 04 Civ. 1203, 2005 WL 2136923 (M.D.N.C. Aug. 05, 2005).

[21]*Id.*

[22]17 U.S.C. § 511(a).

[23]*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 639-640 (1999).

state's wrongdoing.[24]  Third, the court must examine whether there is proportionality and

congruence between the injury to be prevented or remedied and the means provided in the statute

to achieve those ends.[25]

The Supreme Court has not specifically ruled whether the CRCA is a valid exercise of

Congress's power, but it has ruled that similar statutes, the TRCA and the Patent Act, were not

appropriate uses of Congress's power under the Fourteenth Amendment, and therefore are

unconstitutional and invalid.[26]  Those statutes are nearly identical to the CRCA.[27]  Further, other

courts who have examined the CRCA have held, like the TRCA and the Patent Act, is

unconstitutional.[28]

Applying the analysis the Supreme Court set in *Florida Prepaid*, the Fifth Circuit held

that CRCA was an unconstitutional use of Congress's power.[29]  The court found no evidence that

---

[24]*Id.* at 643.

[25]*Id.* at 645.

[26]*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627 (1999). (Supreme Court holding that the Patent Remedy Act was unconstitutional).  *College Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd.*, 527 U.S. 666 (1999). (Supreme Court holding that TRCA was not a valid use of Congressional power).

[27]*See* TRCA at 15 U.S.C. § 1125; Patent Remedy Act at 35 U.S.C. § 271.

[28]*Rodriguez v. Texas Comm'n on the Arts*, 199 F.3d 279 (5th Cir. 2000).  *Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000).  *De Romero v. Inst. of Puerto Rican Culture*, 466 F. Supp. 2d 410 (D.P.R. 2006).  *Hairston v. N.C. Agric & Tech. State Univ.,* No. 04 Civ. 1203, 2005 WL 2136923 (M.D.N.C. Aug. 05, 2005).

[29]*Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000).

CRCA was created in response to a pattern of unconstitutional infringement of copyrights by the states.[30]

Next, the court considered whether Congress had studied the existence and adequacy of state remedies for injured copyright owners cases where a state did infringe on their copyrights.[31] The court concluded that Congress barely considered the availability of state remedies for infringement.[32]  It noted:

> as if to emphasize its lack of interest in state remedies, Congress rejected the idea of granting state courts concurrent jurisdiction over copyright cases, an alternative solution that would have avoided any Eleventh Amendment problems.  *Congress rejected this solution not because it was an inadequate remedy*, but because Congress believed concurrent jurisdiction would undermine the uniformity of law.[33]

Consequently, the court determined that uniformity was an inadequate justification for the use of Fourteenth Amendment enforcement powers.

Finally, the court examined whether there is a congruence and proportionality between the injury to be prevented or remedied and the means provided in the CRCA to achieve those ends.[34]  The court found that liability under the CRCA did not depend on proof of intentional infringement.  Therefore, liability under the CRCA is broader than the rights secured under the Due Process Clause which only protects against intentional, not negligent, deprivations of

---

[30]*Id.* at 605-606.

[31]*Id.* at 606

[32]*Id.*

[33]*Id.* at 607.

[34]*Id.*

9

property.[35]  Thus, the court determined that the CRCA failed the congruence and proportionality

test in *City of Boerne v. Flores.*

   In sum, the Fifth Circuit determined that the CRCA was an improper exercise of

Congressional legislative powers; therefore, Congress did not successfully abrogate Eleventh

Amendment immunity.[36]  I agree with its reasoning.  Hence, Plaintiff's claim for money damages

against the University of Arkansas at Little Rock and the individual Defendants in their official

capacities is DISMISSED.

### C.  Injunctive Relief Exception to the Eleventh Amendment

   Plaintiff also requests injunctive relief.  The Supreme Court has permitted suits for

prospective injunctive relief against state officials as an exception to Eleventh Amendment

immunity under the doctrine of *Ex Parte Young*.[37]  State officials may be sued in their official

capacities for prospective injunctive relief without violating the Eleventh Amendment.[38]  The

same doctrine does not extend to a state or its agencies.[39]  So, individuals can be sued in their

official capacity for prospective injunctive relief.

   Plaintiff's Complaint prays for injunctive relief.  Plaintiff has properly sued these

individuals in their "official capacities" and asks that these individuals be prevented from further

---

[35]Mr. Oman, the Register of Copyrights, noted that most copyright infringement by the states was unintentional.

[36]*Id.*

[37]*Ex Parte Young*, 209 U.S. 123 (1908).

[38]*Id.*.

[39]*Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 443 F.3d 1005, 1017 (8th Cir.2006)(holding that only state officials, not the state can be sued for injunctive relief).

use of their copyrighted work.  Thus, the Motion to Dismiss the Defendants Good and Caldwell, sued in their individual capacities, is DENIED.

### D.  Waiver of Eleventh Amendment Immunity

Plaintiff next argues that Defendants have waived their Eleventh Amendment immunity by sending a cease and desist letter along with a draft complaint.

Generally, courts will find a waiver either if the state voluntarily invokes jurisdiction, or if the state makes a "clear declaration" that it intends to submit itself to federal court jurisdiction.[40]

A state's sovereign immunity is "personal privilege which it may waive at pleasure."[41] Accordingly, the test for determining whether a State has waived its immunity from federal courts is a stringent one.[42]  The Supreme Court determined that "a state does not waive its immunity from federal suit by consenting to suit in state, *by stating its intention 'to sue and be sued*,*'* or by authorizing suits against it 'in any court of competent jurisdiction."[43]  Thus, the cease and desist letter, along with the complaint, was not an effective waiver of Eleventh Amendment immunity by Defendants.

---

[40]*College Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd*., 527 U.S. 666, 675 (1999).

[41]*Clark v. Barnard*, 108 U.S. at 447.

[42]*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 87 L. Ed 2d 171, 105 S. Ct. 3142 (1985).

[43]*College Sav. Bank* at 675-676 (1999).(*quoting Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Assn.,* 450 U.S. 147, 149-150 (1981).

11

### E.  The Arkansas Claims Commission

Plaintiff next argues that the remedies provided by the state of Arkansas are inadequate relief from Defendants actions.

In a recent Court of Appeals decision, the court determined that the state of Arkansas provided sufficient remedies for patent infringement so that it did not violate the Fourteenth Amendment.  In *Pennington Seed, Inc. & AgResearch Ltd. v. Produce Exchange No. 299, et al,*[44] the plaintiffs contended that the University of Arkansas and University officials were subject to suit under the Eleventh Amendment because the state of Arkansas did not provide adequate remedies for patent infringement by the state.   The court disagreed, and it held that the remedies supplied by the state of Arkansas were not so insufficient that they violated the Fourteenth Amendment, and that the infringement of a patent by a state may be actionable in federal courts only if the State provides no remedy, or only inadequate remedies, to injured patent owners for its infringement of their patent.[45]

Although the current lawsuit involves an alleged copyright infringement, I agree with the analysis set forth in *Pennington Seed*; and I conclude that, although there was no state forum in which to contest copyright infringement claims, the other available remedies are not so insufficient that they violate the Fourteenth Amendment.  In the present case, the Arkansas Claims Commission declared and enforced the parties liabilities under the contract, and awarded the Plaintiff the balance of the contract ($15,000).  Although Plaintiff requests more relief, the

---

[44]*Pennington Seed, Inc. & AgResearch Ltd. v. Produce Exchange No. 299, et al,* 457 F.3d 1334 (Fed. Cir 2006).

[45]*Id*. at 1340.

award by the Claims Commission is not so inadequate that it violates the Fourteenth

Amendment.  Therefore, the University is not subject to suit under the Eleventh Amendment of

the Constitution, and any money claims against it should be DISMISSED.

## II.  Conclusion

In sum, the claim for money damages against University, Good and Caldwell, sued in

their official capacity is DISMISSED.   The claim for injunctive relief remains.

IT IS SO ORDERED this 21st day of December, 2007.



/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE